AtKINSON, J.,
delivered the opinion of the court:
The Post Office Department makes the following concise statement of the important facts in this case:
“ During the quadrennial term ending June 80, 1903, the service on route 145021 was stated in the name of the Chicago & Alton Eailway Company and was for the carriage of mails between Mexico and Cedar City, Mo. From July 1, 1903, to June 30, 1907, the service was continued in the name of that company, but was between Mexico and Jefferson City. From July 1, 1901, to September 30,1907, the service was in the name of the Chicago & Alton Eailroad Company, and was between Mexico and Jefferson City. Effective October 1, 1907, the route was curtailed to end at South Cedar City station. The claimant contends that during the period from July 1, 1903, to September 30, 1907, the route should have been stated to end at the terminus of its railway, Cedar City or South Cedar City station; that the statement of the service to Jefferson City unlawfully imposed upon it the expense of transporting the mails between the terminus of its railway and Jefferson City, for which it claims $1,288.80 from the United States.”
The Chicago & Alton Railway Co., to which the first contract was awarded, as above stated, was on March 14, 1906, merged into the Chicago & Alton Railroad Co., the plaintiff in this suit, by proceedings had in accordance with the laws of the State of Illinois.
Mexico is a town on the line of the Chicago & Alton Eailroad, 501, miles from South Cedar City, a station on said railroad immediately opposite Jefferson City, Mo., which is situated on the south side of the Missouri Eiver, the two towns being connected by the Jefferson Bridge & Transit *158 Co.’s bridge, the distance from the railroad station to the J efferson City post office being about TJ miles.
The first contract was for the carrying of the mails of the United States between Mexico and Cedar City, and the Government transported the same across the bridge to the Jefferson City post office; but for the succeeding quadren-’ nial (1903 to 1907) Jefferson City was made the terminal point by the Post Office Department, and the plaintiff company was accordingly required to deliver the mail at the post office in that city, the department allowing a pro rata rate of transportation for the increased distance of the route of T(~ miles. After some correspondence between the railroad company and the Government regarding the expense of transferring the mails across the river, the plaintiff company finally agreed'to perform the service on the mail route as restated by the Post Office Department and received the compensation therefor without objection or protest. However, a short time before the expiration of the 1903-1907 contract the plaintiff company reported to the Post Office Department that inasmuch as its railroad terminal was South Cedar City station and not Jefferson City the mail route should be curtailed to end at said station. The Government insisted that as the plaintiff company maintained passenger and ticket offices in Jefferson City, that city should be regarded the terminus of the mail route. Plaintiff thereupon, on September 7, 1907, notified the department that on October 1, 1907, it would discontinue carrying the mails between its South Cedar City station and the post office at Jefferson City. The Postmaster General accordingly issued an order making South Cedar City station, where there was no post office, the end of the postal route, and thereafter provided for conveying the mails across the Missouri Eiver to the J efferson City post office.
It appears that the amount paid by the plaintiff company under a contract with the Jefferson City Bridge & Transit Co. for the transportation of the mails between South Cedar City and the Jefferson City post office was $400 per year, and that it in return was only paid by the Government for said service the rate fixed by law for the transportation *159 of mails by railroads, viz, $98.12 per annum for that particular distance, which was about one and one-third miles.
All contracts for the carrying of the mails of the United States by railroad companies require each company to perform the service .at the rates fixed by law and upon the conditions prescribed by law and the regulations of the Post Office Department. Section 4002 of the Eevised Statutes, and its amendments, provide the maximum rates that may be paid for such service, and each carrier is governed by the postal laws and regulations and the usual customs of the Post Office Department.
With regard to the transfer of mails between terminal post offices and the respective railroad stations, paragraph 1 of section 1191, Postal Laws and Eegulations, edition of 1902, provides as follows:
“Every railroad, company is required to take the mails from and deliver them into all terminal post offices, whatever may be the distance between the station and post office, except in cities where other provision for such service is made by the Post Office Department. In ,all cases where the department has not made other provision, the distance between terminal .post office and nearest station is computed in and paid for as part of the route.”
If there be no post office near either station, such point is designated as “ no office.”
The contention of the defendants is that it is competent for the Postmaster General to contract with a railroad company to carry mails over the whole or any part of its line of railway, or beyond the terminus of such line if the necessities require, at not exceeding the rates of pay fixed by law; that the plaintiff company expressly agreed with the Postmaster General to carry the mails between the post office' at Mexico, Mo., and the post office at Jefferson City, Mo., in accordance with the law and regulations of the department, and at the rate of pay based on the weights of mails carried, as embodied in the orders of the Postmaster General; that the plaintiff company entered into -this agreement with full knowledge of its liability for the transfer of mails between its station at South Cedar City and the post office at Jefferson City; that it began the performance of this transfer service July 1, 1903, and continued such performance to September *160 BO, 1907; that the company terminated its agreement with the department to carry mails to Jefferson City on October 1, 1907; that the company has received compensation for the transfer service between South Cedar City station and the post office at Jefferson City in accordance with the terms of its agreement with the Postmaster General, and that it can not now be heard to repudiate its express contract regarding this service and claim other or different compensation therefor.
We agree with this contention as to the amount claimed for the period from July 1,1908, to June 30, 1907, for the reason that it was covered by an express contract between the Government and the plaintiff company that required it to deliver the mails at the post office in Jefferson City, which service was rendered by it. But it appears that there was no contract requiring such service by plaintiff from July 1 to October 1, 1907.
The findings show that in February, 1907, the Post Office Department mailed to claimant an agreement, reentering said route for the quadrennial period of July 1, 1907, to June 30, 1911, which continued the terminal of the route at Jefferson City. This contract the plaintiff company refused to sign, and so informed the Post Office Department on May 9, 1907, and requested that South Cedar City, the terminus of its railroad, should be designated as the terminal of the mail route instead of Jefferson City. Not hearing from the postal department, plaintiff again, on June 5, 1907, wrote the Second Assistant Postmaster General a letter in which it gave some additional information, and no reply was received to either of said letters. Plaintiff, expecting a new and satisfactory arrangement to be made, continued to carry the mails to Jefferson City until October 1, 1907; but, in' the meantime, on July 13, 1907, it again wrote the Post Office Department, stating that it would not convey the mails from its station at South Cedar City across the Missouri Eiver to Jefferson City, except upon condition that it be paid $100 per quarter therefor, that being the amount it was required to pay the bridge company for such service. To this letter the Second Assistant Postmaster General replied stating that Jefferson *161 City was the proper terminus of the route and declined to pay the amount demanded. Plaintiff thereupon, on September 7,1907, wrote the postal department stating that it would on October 1 following cease carrying the mails from its depot at South Cedar City across the Missouri Eiver to Jefferson City. In reply to this communication the Second Assistant Postmaster General issued an order making South Cedar City the terminus of the mail route, and at the same time forwarded to plaintiff a new form of contract, agreeing with said order.
It is therefore apparent that there was no contract, either express or implied, for carrying the mails on said route from July 1 to October 1, 1907, and that plaintiff company rendered the service under compulsion as a public necessity, and it should in all good conscience be paid therefor.
From the facts set out in the findings and considering the postal laws and regulations involved in the case, we decide that the claim for additional compensation for the quadrennial period from July 1, 1903, to July 1, 1907, which was covered by an express contract, can not be allowed; but the claim of $100 for the period from July 1 to October 1, 1907, for which time no contract existed, should be paid, less the sum of $24.53 already paid, which would be $75.47, and judgment against the United States is accordingly rendered for said amount.